IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FELIX NIETO                              :
                                         :
                                         :
    v.                                   :     Civil No. CCB-13-3495
                                         :
                                         :
ALLIED INTERSTATE, INC.                  :

## MEMORANDUM

Plaintiff Felix Nieto, proceeding pro se, filed this action alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by defendant Allied Interstate, Inc. ("Allied"), a debt collection agency. Allied has filed a motion for summary judgment. Both parties have filed motions to strike each other's affidavits. For the reasons stated below, the motions to strike will be denied and Allied's motion for summary judgment will be granted.

## BACKGROUND

This action arises out of a series of thirty telephone calls Allied made to Nieto's number, xxx-xxx-2049 ( "2049 number"), between July 5, 2013, and November 19, 2013.

Allied is a debt collection agency. As part of its debt collection process, Allied uses commercial databases to look up the telephone numbers associated with its debtors' accounts. (Def.'s Mot. Summ. J. Ex. E, Commercial Database Results, ECF No. 16-7.) While seeking to collect from one of its debtors, Allied used a LexisNexis database, which mistakenly showed that the debtor's account was associated with Nieto's 2049 number and that that number was assigned to a landline. (Def.'s Mot. Summ. J. Ex. C, Akins Aff. ¶ 5, 8-9, ECF No. 16-5.) Believing that the debtor could be reached at the 2049 number, Allied, seeking repayment, began placing calls to that number on July 5, 2013. Between that date and November 19, 2013—the period during which the calls at issue in this litigation were placed—Allied made thirty such

1

calls. Nieto received those calls to the 2049 number on his cell phone. (Def.'s Mot. Summ. J. Ex. A, Nieto Dep. 42, ECF No. 16-3.) At all relevant times, his 2049 number was assigned to a Voice over Internet Protocol ("VoIP") telephone service, (*id.* at 56), which never charged Nieto on a per-call basis, (Def.'s Mot. Summ. J. Ex. B, Allied Req. for Admis. No. 3, ECF No. 16-4).

Upset that he was receiving unwanted calls, and believing these calls violated the TCPA, Nieto filed this case on November 20, 2013. After unsuccessful mediation efforts, Allied moved for summary judgment on May 13, 2014. After Nieto filed his opposition and Allied filed its reply, Nieto filed an affidavit in support of his opposition. That affidavit, and the two affidavits in support of Allied's motion, became the subject of three motions to strike by the parties.

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*,

721 F.3d 264, 283 (4th Cir. 2013) (citation omitted).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Motions to Strike

Three motions to strike are pending.  Nieto has filed two motions to strike the affidavits upon which Allied relies in its motion for summary judgment.  (Mot. to Strike Aff. of Charles Akin, Jr., ECF No. 23; Mot. to Strike Aff. of Richard Temple, ECF No. 24.)  Allied has filed a motion to strike Nieto's affidavit.  (Mot. to Strike Aff. of Felix Nieto, ECF No. 25.)

Nieto's two motions to strike will be denied.  Without citing any authority, Nieto claims Allied's affidavits are invalid both because they were not notarized and because the affiants, two Senior Vice Presidents, do not identify their technical telecommunications expertise.  Neither argument is valid.  Affidavits need not be notarized so long as they are made under penalty of perjury.  *See* 28 U.S.C. § 1746; *United States v. Arlington Cnty., Va.*, 702 F.2d 485, 490 (4th Cir. 1983) ("The letter declared that it was true under penalty of perjury, which conferred upon it the status of an affidavit." (citing *id.*)).  And the Allied affiants show their competence to testify via personal knowledge.  The affiants do not claim knowledge of the precise inner workings of the equipment used by Allied; rather, they claim knowledge of the overall processes and equipment at issue.  Such testimony does not require in-depth technical expertise.  Moreover, "ordinarily, officers . . . have personal knowledge of the acts of their corporations."  *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1342 (4th Cir. 1992).

Allied's motion to strike will be denied. While it would have been preferable for Nieto to file his affidavit at the same time as his opposition to Allied's motion for summary judgment, in light of his pro se status, Nieto's affidavit will be considered timely.

Accordingly, all three of the parties' motions to strike will be denied.

## II. Motion for Summary Judgment

The TCPA seeks to "curb abusive telemarketing practices that threaten the privacy of consumers and businesses." *Lynn v. Monarch Recovery Mgmt., Inc.*, WDQ-11-2824, 2013 WL 1247815, at *3 (D. Md. Mar. 25, 2013) (quoting *Ashland Hosp. Corp. v. SEIU*, 708 F.3d 737, 741 (6th Cir. 2013). To that end, the TCPA prohibits four telemarketing practices. *See* § 227(b)(1). The prohibited practice relevant here is embodied in section 227(b)(1)(A)(iii), which prohibits persons from:

> mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

"Automatic telephone dialing system" ("ATDS"), in turn, is defined as "equipment which has the capacity" both "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." § 227(a)(1). Thus, to prevail on his claim, Nieto must show that Allied used an ATDS and that his phone number was assigned to a service within the meaning of the TCPA.

In light of this statutory framework, Allied argues summary judgment should be granted in its favor on two grounds: first, Allied did not use an ATDS and, second, the 2049 number to

which Allied made calls was not assigned to a "cellular telephone service."[1]  In opposition, Nieto argues that competitive pressures require Allied to use an ATDS when making calls and that his VOIP-based telephone service does, in fact, fall within the TCPA's scope.  As an initial matter, the court notes the meager evidence both in support of and in opposition to Allied's motion.  Allied relies on a deposition of Nieto and brief affidavits from two Senior Vice Presidents.  Nieto relies on general assertions, an unidentified screenshot of a telephone system database, and prior settlements Allied entered into based on its debt collection practices.  Nevertheless, the record, viewed in a light most favorable to Nieto, reveals that no genuine dispute remains on either issue and that Allied is entitled to judgment as a matter of law.  Accordingly, Allied's motion for summary judgment will be granted.

No genuine dispute exists as to whether Allied used an ATDS in calling Nieto.[2]  In support of its assertion that it did not use an ATDS, Allied presents an affidavit from Richard Temple, Allied's Senior Vice President of Telephony, who declares that Allied does not use an ATDS when placing calls in support of its collection activity.[3]  Temple testified under penalty of perjury, and based on personal knowledge.

The evidence Nieto offers to contest this issue is not sufficient to create a genuine dispute.  Nieto primarily relies on his conjecture that market pressures required Allied to use an ATDS.  (Pl.'s Opp'n 2, ECF No. 20 ("In order for [Allied] to be competitive in today's debt

---

[1] Nieto does not allege in his complaint that his service was anything other than cellular.  (*See* Compl. ¶ 11 (alleging Allied violated TCPA by calling "Plaintiff's cell phone"); *id.* at ¶ 18 ("Plaintiff's number, which is assigned to a cellular telephone service.").)

[2] Though Nieto does not address this issue in his opposition, no genuine dispute exists as to whether Allied used an "artificial or prerecorded voice" to make calls to Nieto.  When asked what was the basis for his belief that Allied used an artificial or prerecorded voice, Nieto said, "[o]n the premise that that is how [they] work."  (Nieto Dep. 74.)

[3] Specifically, Richard Temple declares that (1) "[t]elephone numbers dialed by Allied . . . are not generated by a computer system, but rather are listed in the underlying client file"; (2) Allied's "dialing equipment . . . does not have the capacity to store or produce telephone numbers to be called using a random number generator" or "sequential number generator"; and (3) Allied never used such dialing equipment to call the 2049 number during the time period alleged in Nieto's complaint.  (Def.'s Mot. Summ. J. Ex. D, Temple Aff. ¶¶ 5-8, ECF No. 16-6.)

collection industry/marketplace [Allied] ha[s] to use an autodial system in some form when making calls, and store numbers in their system . . . .").) But "conclusory allegations" and "mere speculation" of this kind are insufficient. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Nieto also submits an unidentified screenshot of what he purports is a system database that debt collection agencies use. (Pl.'s Opp'n Ex. A, ECF No. 20-1.) Yet he does nothing to show that Allied used such a system when it called him. And even if it were of Allied's system, the screenshot does not prove the existence of an ATDS because nothing depicted suggests autodialing capacity. Nieto finally points out that Allied does not present any objective evidence of the technical specifications of its telephone dialing system—either of its own accord or in response to Nieto's reasonable discovery requests—implying that Allied is hiding material facts. But Allied's senior management has testified under penalty of perjury that Allied does not use an ATDS. Without other evidence calling Allied's affidavits into question, Nieto cannot prevail.[4]

Moreover, it is not clear whether the service to which Nieto's 2049 number was assigned was of the kind that falls within the TCPA. Allied showed that Nieto's number was not assigned to a cellular telephone service both through deposition testimony elicited from Nieto that his phone is assigned to a VoIP-based device that is merely "*comparable* to a cellular or mobile radio device," (Nieto Dep. 47 (emphasis added)), and through Nieto's failure to object to a request for admission that his 2049 number "was not assigned to a cellular telephone service," (Allied Req. for Admis. No. 3). Nieto relies on his decades of expertise in telecommunications to argue for a more nuanced understanding of the technology underlying his VoIP service.[5] In

---

[4] The court is somewhat sympathetic to Nieto's inability to receive discovery responses, particularly in light of his pro se status. In short, Allied could have been more forthcoming during discovery. Yet Nieto unilaterally walked out of his deposition. Also, Nieto neither voiced his concern over Allied's responses nor filed a motion to compel.
[5] Notably, Nieto never asserts his VoIP-based service *is* a cellular phone service. Instead, Nieto declares that the former is "comparable in technical design to" and "comparable to what people, lay people, understand as" the latter. (Nieto Dep. 48.) On the other hand, Nieto clarified in his affidavit that his was a "mobile radio device similar to a cellular based system," and not simply a cellular-based device. (Nieto Aff. ¶ 5, ECF No. 22.)

any event, whether Nieto's service falls within the scope of the TCPA is not a question the court needs to resolve for this case, because Nieto cannot satisfy the requirement of proving Allied uses an ATDS.[6] Accordingly, the calls Allied made to Nieto cannot give rise to liability under the TCPA.

## CONCLUSION

For the reasons stated above, both parties' motions to strike will be denied, and Allied's motion for summary judgment will be granted.

A separate Order follows.

<u>October 3, 2014</u>                                              <u>          /S/                              </u>
         Date                                                                  Catherine C. Blake
                                                                                     United States District Judge

---

[6] Nieto never alleged that his service fell within the last statutory ground—that is, "any service for which the called party is charged for the call." Even if he had, no evidence exists showing he was charged on a per-call basis.